**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAWN BOUTTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **MARGARET SPELLINGS,** | ) | **07 C 3233** |
| **SECRETARY OF THE** | ) | |
| **DEPARTMENT OF EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff, Dawn Boutté, has sued Margaret Spellings, Secretary of the Department

of Education ("DOE"), pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, for

judicial review of defendant's denial of Boutté's request to discharge her student loans on the

grounds of a total and permanent disability under 20 U.S.C. § 1087(a).  The parties have cross-

moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  For the

reasons stated in this Memorandum Opinion and Order, the Court grants Spelling's motion and

denies Boutté's motion.

## Local Rule 56.1

On March 24, 2008, defendant provided plaintiff with a "Notice to *Pro Se* Litigant

Opposing Motion for Summary Judgment" and a copy of Rule 56 and Local Rule 56.1, which

thoroughly explained her obligations with regard to her own summary judgment motion and her

response to defendant's motion.  These documents also explained the consequences of her failure

to comply with Local Rule 56.1. Nonetheless, when plaintiff responded to defendant's motion and when plaintiff herself moved for summary judgment, she failed to comply with LR 56.1.

First, LR 56.1(a)(3) requires that the moving party file a statement of material facts that consists of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." In filing a motion for summary judgment, a *pro se* litigant is not exempt from complying with procedural rules. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced."); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("Although civil litigants who represent themselves ('pro se') benefit from various procedural protections not otherwise afforded to the attorney-represented litigant . . . pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines.")

Boutté did not provide a numbered statement of material facts in support of her motion for summary judgment as required by LR 56.1(a)(3). Pursuant to LR 56.1(a)(3), failure to submit such a statement constitutes grounds for denial of the motion. LR 56.1(a)(3). Accordingly the Court denies her motion.[1]

---

[1]Even if the Court were to address the merits of her motion, however, it would still fail. The Court notes that Boutté merely describes facts in her memorandum without providing any citation to the record. For example, plaintiff argues that she is "permanently disable[sic], and that her disability, has incapacitated, [sic] her from a normal daily life," and that her "doctor, has tried time and time again, to accommodate the request for medical information" without providing any specific references to the record to support these broad allegations. (Pl.'s Mot. Summ. J. ¶ 2.) She also intimates that an additional doctor's letter dated July 28, 2007 exists, but she fails to provide the letter and the administrative record does not contain such a letter. (*Id.* ¶ 3.)

Second, LR 56.1(b)(3) requires "a concise response to the movant's statement" that contains "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the . . . parts of the record, and other supporting materials relied upon." A nonmovant's failure to comply with LR 56.1(b) results in an admission of all facts set out in the movant's Statement of Material Facts. LR 56.1(b)(3)(C); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). The Seventh Circuit has consistently upheld a district court's strict enforcement of the local rules regarding summary judgment "[b]ecause of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th. Cir. 2005). Moreover, the Seventh Circuit has upheld a district court's strict enforcement when a *pro se* litigant opposes summary judgment. *See Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001).

Boutté failed to respond to the numbered paragraphs in defendant's statement of material facts. Accordingly, pursuant to LR 56.1(b), the facts asserted in defendant's statement of material facts that are supported by the Administrative Record ("A.R.") are deemed admitted.[2]

---

[2]Moreover, the Court, having examined in great detail Boutté's memorandum in opposition to defendant's summary judgment motion and attachments thereto, finds that these submissions do not properly dispute defendant's statement of material facts as contemplated by Rule 56 or LR 56.1(b).

**Facts**

On or about January 31, 1996, plaintiff signed promissory notes for two Stafford loans obtained for studies at Columbia College. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 3, 5.) On or about March 12, 1996, the first subsidized Stafford loan was disbursed in the amount of $1,313.00, and on April 8, 1996, an additional $1,312.00 was disbursed. (*Id.* ¶ 3.) On the same day, the second unsubsidized Stafford loan was disbursed in the amount of $2,000.00, and on April 8, 1996, an additional $2,000.00 was disbursed. (*Id.* ¶ 6.)

On or about August 18, 1996, plaintiff signed the promissory notes for two additional Stafford loans obtained for studies at Columbia College. (*Id.* ¶¶ 8, 11.) On or about September 30, 1996, the third subsidized Stafford loan was disbursed in the amount of $1,313.00, and on February 17, 1997, an additional $1,312.00 was disbursed. (*Id.* ¶ 9.) On the same day, the fourth unsubsidized Stafford loan was disbursed in the amount of $2,000.00, and on February 17, 1997, an additional $2,000.00 was disbursed. (*Id.* ¶ 12.)

On January 9, 1999, plaintiff defaulted on all four Stafford loan obligations. (*Id.* ¶¶ 4, 7, 10, 13.) As of July 10, 2007, plaintiff owed the DOE $2,862.83 on the first subsidized loan, $4,870.46 on the second unsubsidized loan, $2,863.74 on the third subsidized loan, and $4,761.83 on the fourth unsubsidized student loan. (A.R., Ex. M.)

On three different occasions, plaintiff applied for a loan discharge based on her alleged total and permanent medical disability. On January 14, 2003, the DOE received plaintiff's first disability loan discharge application. (Def.'s LR 56.1(a)(3) Stmt. ¶ 14.) Apparently, plaintiff was unsure that she qualified as totally disabled because she called the DOE to inquire whether she could be permanently disabled if she was able to care for herself. (*Id.*) On April 16, 2003,

the DOE received a letter dated October 1, 2001 from plaintiff's physician, Dr. Eric Brehm, indicating that plaintiff suffered from spinal stenosis causing chronic lower back pain and was in therapy. (*Id.* ¶ 15; A.R., Ex. H.) Because the DOE concluded that plaintiff's condition did not prevent her from being able to work, it denied her disability application on that same date. (Def.'s LR 56.1(a)(3) Stmt. ¶ 15.) After the rejection, plaintiff asked permission to send in additional documents in support of her application, and the DOE mailed her a new application. (*Id.* ¶ 16.)

Over a year later, on August 20, 2004, plaintiff called the DOE and stated that she was totally and permanently disabled. (*Id.* ¶ 17.) On October 3, 2004, the DOE received plaintiff's second disability loan discharge application. (*Id.*) The DOE again denied her application because she failed to include any additional documentation showing inability to work in support of her disability claim. (*Id.*)

On January 25, 2005, defendant received plaintiff's third disability loan discharge application. (*Id.* ¶ 18.) This application contained a physician's letter stating that plaintiff became unable to work on November 26, 1999. (*Id.*) In light of this new evidence, plaintiff was preliminarily approved for conditional disability certification, and her application was sent to the DOE's Conditional Disability Discharge Unit's ("CDDU") medical review team. (*Id.*)

Between March 29, 2005 and June 2005, the CDDU's medical review team coordinated with plaintiff and her physicians in attempt to obtain the necessary documentation to complete the disability review. (*Id.* ¶ 20.) However, the review team found that plaintiff's physicians failed to provide the necessary details to verify that she had a total disability that permanently prevented her from working. (*Id.*) The information that the medical review team needed from

plaintiff's doctor to verify total and permanent disability included documentation stating

plaintiff's residual functions, whether she used or could have used assistive devices, any

medications taken, and whether plaintiff had plans for surgical intervention.  (*Id.*)  Because the

medical review team did not receive this documentation from plaintiff, the DOE preliminarily

denied her application and advised her regarding the information required to complete the

evaluation.  (*Id.* ¶¶ 20-21.)  Plaintiff then submitted another letter from her physician, which the

CDDU medical review team again found did not verify her disability because it did not discuss

any permanently disabling symptoms relating to her residual physical functionality that

permanently and totally prevented her from working; for example, her ability to stand, walk, and

lift.  (*Id.*)  The DOE denied plaintiff's third application. (*Id.*)

Following the third denial, plaintiff made several phone calls to the DOE, including one

in which she stated her intent to submit additional documentation.  (*Id.* ¶ 23.)  The DOE allowed

plaintiff to submit a new letter from her physician.  (*Id.*)  However, the medical review team

determined that the new letter still failed to show permanent and totally disability because it did

not sufficiently describe any permanently disabling conditions, did not indicate whether surgery

was being considered and did not provide any other information as required.  (*Id.*)

Consequently, the DOE confirmed that the denial should stand.  (*Id.*)  In February 2006, the

medical review team received yet another communication from plaintiff's physician.  (*Id.* ¶ 24.)

Again, it found that the letter lacked the information necessary to document a total disability that

permanently prevented plaintiff from working, and the DOE confirmed that the third denial

should stand.  (*Id.*)

On March 9, 2006, plaintiff filed a lawsuit in the Northern District of Illinois appealing the agency's denial of her loan discharge application. (*Id.*) On March 1, 2007, this Court dismissed the case and remanded to the DOE for reconsideration based on newly compiled medical documentation. (*Id.*) On May 1, 2007, the DOE's CDDU's medical review team received extensive new medical documentation, which was reviewed by its medical staff. (*Id.* ¶ 26; A.R., Ex. K.) On July 2, 2007, the CDDU sent a letter to the DOE explaining its conclusion that plaintiff did not meet the requirement for total and permanent disability. (A.R., Ex. K.) The letter states:

> As of the date of this letter, none of the information provided by Dr. Raby supports a determination of total and permanent disability.
>
> In order to continue the disability discharge review process, Dr. Raby must provide us with Ms. Boutte's current physical, assistive devices, frequency of pain medication, surgical plans and history, treatment plan, an explanation why Ms. Boutte is unable to be employed in any capacity or occupation, explanation why she is unable to work part time or in a sedentary position, and duration to sitting, standing, walking, lifting, and activities of daily living.
>
> We hope this information will be helpful to you when responding to Ms. Boutte.

(*Id.*) Accordingly, the DOE denied plaintiff's loan discharge application on remand. (*Id.*)

On June 8, 2007, plaintiff filed a *pro se* complaint with this Court. In the complaint, plaintiff disputes the validity of the DOE's most recent denial of her medical disability loan discharge application. (Compl. ¶ 2.) Plaintiff alleges that the balance of her student loans should be dismissed on the grounds that she is permanently and totally disabled under 20 U.S.C. § 1087(a). (*Id.* ¶¶ 1, 2.)

On November 16, 2007, plaintiff filed a motion to add updated medical information. On April 21, 2008, this Court granted plaintiff's motion. The updated medical information is a letter from Dr. Theri Griego Raby, dated July 18, 2007, which states:

> Ms. Dawn Boutte has been under my medical care since October 2001. In 2003, she attained disability retirement based on her history of a Cerebrovascular Accident, Coronary Artery Disease, Hypertension, severe Spinal Stenosis, and Osteoarthritis. My assessment at this time includes a persistent diagnosis with all of the above, which is moderately controlled with medication and physical therapy. Her prognosis entails probable progression unless more drastic measures like surgical intervention take place. Our future plans include physical therapy, medications, and weight loss.

(Pl.'s Mot. Add Updated Medical Information.) The parties have cross-moved for summary judgment.

## Discussion

A motion for summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Tibbs v. City of Chi.*, 469 F.3d 661, 664 (7th Cir. 2006).

At the time of the filing of the complaint, defendant was the Secretary of the DOE, *i.e.*, an officer of a federal administrative agency.[3] Under the relevant part of the Administrative Procedure Act ("APA"), a court may "hold unlawful and set aside agency action, findings, and

---

[3] Pursuant to 5 U.S.C. § 703, an action for judicial review of an agency decision may be brought against an officer of the agency.

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[4]  However, the Court "shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.  "The arbitrary and capricious standard is highly deferential, and even if we disagree with an agency's action, we must uphold the action if the agency considered all of the relevant factors and we can discern a rational basis for the agency's choice." *Israel v. U.S. Dep't of Agric.*, 282 F.3d 521, 526 (7th Cir. 2002) (internal citations omitted).  An agency's failure to explain adequately its actions in a manner that frustrates judicial review does not permit the district court to conduct a *de novo* evidentiary hearing.  *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973).  Where the agency's finding is not sustainable on the administrative record made, then the decision must be vacated and the matter remanded to the agency for further consideration.  *Id.* at 143.

Plaintiff's complaint alleges that the DOE's denial of her medical disability loan discharge application was improper because she is totally and permanently disabled under 20 U.S.C. § 1087(a).  (*See* Compl ¶ 2.)  Defendant moves for summary judgment and argues that there is no genuine issue of fact for trial regarding whether the DOE properly denied plaintiff's application under 20 U.S.C. § 1087(a) and 34 C.F.R. § 682.402(c)(1).

The statute provides that "[i]f a student borrower who has received a loan . . . dies or becomes permanently and totally disabled (as determined in accordance with regulations of the Secretary), then the Secretary shall discharge the borrower's liability on the loan by repaying the amount owed on the loan." 20 U.S.C. § 1087(a).  The implementing regulations provide that

---

[4] Because the statute does not provide for any alternative appeal procedure for DOE decisions, the appeal procedure is in accordance with the APA.

"[a] borrower's loan is discharged if the borrower becomes totally and permanently disabled as defined in § 682.200(b)." 34 C.F.R. § 682.402(c)(1). The Secretary defines permanently and totally disabled as "[t]he condition of an individual who is unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death." *Id.* § 682.200(b).

Upon receipt of a loan discharge application for total and permanent disability, the Secretary must review the borrower's application and make an initial eligibility determination. *Id.* § 682.402(c)(3). If the Secretary makes the initial determination that the borrower's certification "supports the conclusion" that the borrower meets the criteria, the loan is placed in a conditional discharge status for a period of up to three years (beginning on the date the physician certified on the application that the borrower is totally and permanently disabled). *Id.* If the Secretary determines that the borrower's application does not conclusively prove that the borrower is disabled, the Secretary may require the borrower to submit additional medical evidence. 34 C.F.R. § 682.402(c)(4)(v). At anytime during the conditional discharge period, or at its expiration, the Secretary can determine that the borrower does not continue to meet the eligibility criteria, end the conditional discharge period, and resume collection on the loan. *Id.* § 682.402(c)(4)(iv). Further, the borrower "[m]ust provide the Secretary, upon request, with additional documentation or information related to the borrower's eligibility for a discharge." *Id.* § 682.402(c)(4)(ii)(E).

In this case, plaintiff was preliminarily approved in May 2005 for a conditional loan discharge and her application was sent to the CDDU for review. (Def.'s LR 56.1(a)(3) Stmt. ¶ 18.) Between March 2005 and June 2005, the CDDU's medical review team coordinated with

plaintiff and her physicians in attempt to obtain the necessary documentation to complete the

disability review. (*Id.* ¶ 20.) However, after multiple submissions by plaintiff of additional

evidence, the review team found that plaintiff's physicians failed to provide the necessary details

to verify that she had a total disability that permanently prevented her from working and the

DOE denied her application accordingly. (*Id.* ¶¶ 20-24.) In March 2006, plaintiff filed a lawsuit

appealing the agency's denial, which the Court dismissed and remanded to the DOE for

reconsideration based on newly compiled medical documentation. (*Id.* ¶ 24.)

On May 1, 2007, the DOE's CDDU received the new medical documentation, which was

reviewed by its medical staff. (*Id.* ¶ 26; A.R., Ex. K.) On July 2, 2007, the CDDU sent a letter

to the DOE explaining its conclusion that plaintiff did not meet the requirement for total and

permanent disability. (A.R., Ex. K.)

Upon review of the undisputed facts as well as the Administrative Record before the

Court, it is clear that the DOE has not abused its discretion or acted arbitrarily or capriciously in

denying plaintiff's application for medical disability loan discharge. The medical review staff

received the new documentation on May 1, 2007. (A.R., Ex. 1.) On that same day, examiner

Allison Olivadoti stated that the record showed that as of December 2006, plaintiff had normal

strength. (*Id.*) Olivadoti stated that plaintiff still lacked any evidence of necessary assistive

devices, frequency of pain medication, surgical plans or history of surgery, a treatment plan, and

the duration during which plaintiff was able to sit/stand/walk/lift and she needed to know why

plaintiff could not be employed in any capacity or occupation including light-duty, part-time or

sedentary-duty jobs. (*Id.*) Another examiner, Natalie Peters, noted that plaintiff possessed

normal motor muscle strength and normal reflexes and failed to comply with her doctor's

11

recommended medication, exercise and diet control. (*Id.*) Peters also noted that plaintiff was

able to engage in light-duty work. (*Id.*) Thus, it appears that the agency reasonably concluded

that a loan discharge was not warranted because Boutté lacked the necessary documentation to

support that she was permanently and totally disabled.[5]

Plaintiff contends, without reference to the Administrative Record, that she "was coded a

C-3 or D-3, by the office of retirement disability" and that these classifications by the office of

retirement disability should be considered in discharging her student loan. (Pl.'s Resp. Def.'s

Mot. Summ. J. ¶ 12.) To support this assertion, plaintiff references a letter from her physician,

Dr. Raby, addressed to the Department of the Treasury, dated April 4, 2005, stating in a

conclusory manner that she was permanently and totally disabled on November 15, 2002. (*Id.* ¶

8.) However, without the proper documentation to support that she was permanently and totally

disabled pursuant to the DOE regulations, the DOE was not required to credit this conclusory

statement from her physician. Further, the DOE was not required to consider plaintiff's

purported disability status with other agencies in making its determination. (*See* A.R., Ex. R.)

The DOE's loan discharge application for total and permanent disability explicitly states that

---

[5]Defendant asserts that the DOE extensively reviewed plaintiff's additional documentation and
that the documentation failed to meet the DOE's requirement for total and permanent disability.
(Def.'s LR56.1(a)(3) Stmt. ¶ 25.) Defendant additionally asserts that the DOE gave plaintiff
multiple opportunities throughout the conditional discharge to supply additional documentation,
and despite the fact that she was given the opportunity, plaintiff failed to provide sufficient
documentation. (*See, e.g., id.* ¶ 21.) Specifically, the July 2, 2007 letter from the CDDU to the
DOE explained that the medical review team needed plaintiff's doctor to provide an
"explanation why [plaintiff] is unable to be employed in any capacity or occupation . . . [and]
why she is unable to work part time or in a sedentary position." (A.R., Ex. K.) The CDDU
further stated that it required evidence of plaintiff's "current physical, assistive devices,
frequency of pain medication, surgical plans and history, treatment plan . . . and duration to
sitting, standing, walking, lifting, and activities of daily living." (*Id.*)

"[t]he standard for determining disability for discharge of the borrower's loan(s) may be different from standards used under other programs in connection with occupational disability, or eligibility for social service or veterans benefits." (*Id.*)

Lastly, plaintiff submitted new medical information after initiating the lawsuit, *i.e.*, another letter from Dr. Raby dated July 18, 2007 that states that plaintiff suffered from persistent coronary artery disease, hypertension, severe spinal stenosis, and osteoarthritis. (Pl.'s Mot. Add Updated Medical Information.) However, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142-43.

Even if the new evidence were properly before this Court, it does not warrant remand because it fails to establish that Boutté is totally and permanently disabled under the DOE regulations. Dr. Raby's letter indicates that the aforementioned conditions are "moderately controlled with medication and physical therapy," surgical intervention could halt the progression of her conditions, and there are future treatment plans of "physical therapy, medications, and weight loss." (Pl.'s Mot. Add Updated Medical Information.) Despite being told that she was required to provide an explanation as to why she is unable to be employed in any capacity or occupation, she has simply failed to provide such information.

Viewing all the facts and drawing all reasonable inferences therefrom in her favor, Boutté fails to raise any genuine issue of material fact as to whether the DOE abused its discretion when it denied her loan discharge application. Accordingly, the Court grants defendant's motion for summary judgment and upholds the DOE's denial of plaintiff's medical disability loan discharge application. The Court denies plaintiff's motion for summary judgment.

## Conclusion

For the foregoing reasons, the Court grants defendant's summary judgment motion [doc. no. 24], denies plaintiff's cross-motion [doc. no. 23], upholds the Department of Education's denial of plaintiff's medical disability loan discharge application and hereby terminates this case.

**SO ORDERED**                    **ENTERED:**


**February 11, 2009**

_____
**HON. RONALD A. GUZMAN**
**United States Judge**